NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRYAN M. SANTINI, | |
| Plaintiff, | Civil Action No. 11-639 (JAP) |
| v. | **OPINION** |
| COLONEL JOSEPH R. FUENTES, et al., | |
| Defendants. | |

This is a § 1983 case by Plaintiff Bryan M. Santini ("Plaintiff") against Defendants Colonel Joseph R. Fuentes, Trooper J.L. Fuhrmann, Trooper R.H. Sickles, and the State of New Jersey (collectively "Defendants"). Presently before the Court is Defendants' Motion for Summary Judgment [docket # 41]. The Court decides this case without oral argument. *See* Fed. R. Civ. P. 78. For the reasons outlined below, Defendants' Motion is granted with respect to the federal claims, and this Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c).

**I.     BACKGROUND**

On February 3, 2009, two women — Tiffany Drake and Crystal Knighton — had a physical altercation at Plaintiff's family's dairy farm in Harmony Township, New Jersey, and 911 was called [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. A, Compl. ¶¶23-26; docket # 50, Declaration of Jeffrey M. Patti, Ex. D, Plaintiff's Deposition, 55:2-4]. Because there were reportedly fifteen people involved in the incident, several law enforcement officers responded,

1

including officers from Greenwich and Lopatcong Townships as well as Troopers Fuhrmann and Sickles from the New Jersey State Police [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. A, ¶ 27; Ex. C, Report of Patrolman Louis Laford; Ex. D, Grand Jury Testimony of Trooper Fuhrmann, 12:19-23; 13:5-6]. Plaintiff's family farm, the location of the dispute, is in the State Police's jurisdiction. *Id.* at Ex. D, 14:2-4.

By the time Troopers Fuhrmann and Sickles arrived at the farm, the scene was calm. [*Id.* at Ex. C; docket # 50, Declaration of Jeffrey M. Patti, Ex. I, Trooper Fuhrmann's Deposition, Ex. 44:12-15]. The officers from Greenwich and Lopatcong Townships, who were at the scene before the Troopers, told them that Plaintiff "may have witnessed" the altercation "or may have videotaped the incident with his cell phone" [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. D, Grand Jury Testimony, 15:10-20]. The Troopers also spoke to one of the women who engaged in the physical altercation, Tiffany Drake. *Id.* at Ex. C. Although Ms. Drake stated that she "unequivocally did not say that [Plaintiff] recorded video/pictures of the altercation with his cellular telephone to the Trooper," Grand Jury testimony revealed that Ms. Drake stated that Plaintiff "possibly videotaped the incident on his cell phone." [*Id.* at Ex. D., 21:1-6; docket # 50, Declaration of Jeffrey M. Patti, Ex. A, Tiffany Drake's Affidavit, ¶ 5].

As a result, Trooper Fuhrmann spoke with Plaintiff [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. C.; Ex. D, 20:4-7]. Plaintiff was wearing a baggy sweatshirt and sweatpants at the time. *Id.* at Ex. D, 21:5-17. Trooper Fuhrmann asked Plaintiff if he videotaped the altercation, and at that point, Plaintiff shoved his hands in his pockets and avoided eye contact with the Trooper. *Id.* at Ex. D, 21:17-22:1. Based on his training, Trooper Fuhrmann thought that Plaintiff's response indicated that Plaintiff was deciding whether to run away, conceal something, or get involved in an altercation with the Trooper. *Id.* at Ex. D, 22:5-10. The

2

Trooper asked Plaintiff "repeatedly" to take his hands out of his pockets because Trooper Fuhrmann could see "some type of hard object in there" and was worried about everyone's safety. *Id.* at Ex. D, 22:11-23; *see also* Ex. C. Plaintiff took his hands out of his pocket and put them right back into his sweatshirt pocket. *Id.* at Ex. D, 22:24-25. Again, he took his hands out of his pockets for a "couple of seconds" and then put them into his pants pocket. *Id.* at Ex. D, 23:1-3. Plaintiff admits that he had his hands in his pockets and Trooper Fuhrmann kept asking him to remove them. *Id.* at Ex. E, Deposition of Bryan Santini, 62:1-64:24. At this point, Trooper Fuhrmann went over to Plaintiff to try and "retrieve his hands from his pockets" because he learned in law enforcement training that "hands are what's going to . . . cause you harm" since a weapon cannot hurt a person if it is on the floor and not in someone's hands. *Id.* at Ex. D, 23:7-19. Plaintiff told the Trooper that he was going to return to work and began walking away. *Id.* at Ex. E, 64:20-24; *see also* Ex. C. According to the Trooper, Plaintiff took his right hand out of his pocket and touched Trooper Fuhrmann with an open hand on the shoulder to prevent the Trooper from gaining control of his hands. *Id.* at Ex. D, 23:21-24:1. According to Plaintiff, however, Trooper Fuhrmann grabbed Plaintiff's arm as Plaintiff walked away [docket # 50, Declaration of Jeffrey M. Patti, Ex. D, Deposition of Plaintiff, 65:1-13]. Plaintiff and Trooper Fuhrmann engaged in a "grasping match" as the Trooper tried to obtain control of Plaintiff's hands since he did not know if Plaintiff was concealing anything [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. D, 24:2-7]. Plaintiff and the Trooper struggled, fell to the ground, and other officers attempted to assist Trooper Fuhrmann. *Id.* at Ex. D, 24:8-25:4; *see also* Ex. C. The other officers "repeatedly" told Plaintiff to stop resisting. *Id.* at Ex. C; Ex. D, 25:15-16; Ex. E, 67:21-68:2. Ms. Drake, who witnessed Plaintiff's confrontation with the Trooper, however, stated that Plaintiff did not resist but "just laid there like a dead fish" [docket # 50, Declaration of

3

Jeffrey M. Patti, Tiffany Drake's Affidavit, ¶ 11]. During this struggle, Trooper Fuhrmann and Detective Michael Patricia used pepper spray on Plaintiff, and Trooper Sickles and Patrolman LaFord from Lopatcong Township used their police batons on Plaintiff [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. C; Ex. D, 39:4-6, 70:13-17; Ex. G, Complaint Report, Greenwich Township Police]. Subsequently, Plaintiff was arrested and charged with aggravated assault on a law enforcement officer pursuant to N.J.S.A. 2C:12-1. *Id.* at Ex. C; Ex. I, Arrest Record.

Three days after the incident, on February 6, 2009, Plaintiff went to see Dr. James T. Finegan, Jr., an opthomalogist, because Plaintiff complained of some unresolved pain due to the Troopers using pepper spray on him. *Id.* at Ex. L, letter from Dr. Finegan to Dr. Durrani. Dr. Finegan did not see any "sign[s] of bruising, trauma or any other disturbance to the face or the head on exam." *Id.* Dr. Finegan opined that "[t]here was no sign of trauma or residual damages from the mace to his eyes or his face." *Id.* Plaintiff also saw his family doctor, Dr. Durrani, to "see if anything was wrong with" him. *Id.* at Ex. E, 80:1-11. Dr. Durrani sent Plaintiff for an Open MRI. *Id.* at Ex. E, 80:12-15. Plaintiff had the Open MRI on February 9, 2009, and the results of the test revealed "[n]o facial fractures." *Id.* at Ex. N, Findings of the CT Scan. On that day, Plaintiff also had an X-ray of the chest and ribs, which revealed no fractures. *Id.* at Ex. O, Findings of Xray of Chest and Ribs. Plaintiff "has not served a medical expert report attributing any alleged injury suffered by [P]laintiff to these [D]efendants." Defendants Statement of Undisputed Material Facts, #68.

On May 13, 2009, the case was presented to the Warren County Grand Jury [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. D, Grand Jury Transcript]. That day, the Grand Jurors returned a True Bill against Plaintiff, indicting him for aggravated assault pursuant to N.J.S.A. 2C:12-1b(5)(a). *Id.* at Ex. J, Grand Jury True Bill.

In August 2009, two days before a scheduled pre-trial conference, the State brought two new charges in addition to the aggravated assault charge: obstruction of justice and resisting arrest. *Id.* at Ex. B, Transcript of Plea, 3:16-24; docket # 50, Declaration of Jeffrey M. Patti, Ex. J, Plaintiff's Affidavit, ¶ 6. On August 12, 2009, Plaintiff pled guilty to resisting arrest; the aggravated assault and obstruction charges were dismissed as part of the plea. *Id.* at Ex. B, 4:14-18. Plaintiff described what happened on February 3, 2009 and admitted that he resisted arrest. *Id.* at Ex. B, 8:8-9:12.

On February 3, 2011, Plaintiff filed this Complaint against Defendants and Greenwich Township, Patrolman Dennis Cahill, Chief of the Greenwich Township Police Richard Guzzo, Lopatcong Township, Chief of Lopatcong Township Police Scott Marinelli, Detective Michael Patricia, and Sergeant David Voll. *Id.* at Ex. A, Compl. Plaintiff alleged: (1) federal constitutional violations, including 42 U.S.C. § 1983, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment; (2) a violation of N.J.S.A. 10:6-2; (3) New Jersey constitutional violations, including N.J.S.A. 10:6-2; (4) false imprisonment/false arrest/malicious prosecution; (5) civil conspiracy; and (6) a violation of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq*. Ex. A, Compl. On September 12, 2011, this Court signed a stipulation of dismissal, dismissing Defendants Greenwich Township, Sergeant David Voll, Patrolman Dennis Cahill, Chief Richard Guzzo, Lopatcong Township, Detective Michael Patricia, and Chief Scott Marinelli, with prejudice [docket # 15].

The remaining Defendants filed the Motion for Summary Judgment currently at issue on January 11, 2013 [docket # 41]. In that Motion, Defendants' argued judgment as a matter of law on Count One – the federal constitutional claims – should be granted because: (1) the claims against the State and the Troopers in their official capacities are barred by the Eleventh

Amendment; (2) neither the State nor the Troopers are persons under § 1983; (3) § 1983 precludes recovery based on the theory of *respondeat superior* and supervisory liability; and (4) the Troopers are entitled to qualified immunity on all § 1983 claims. Additionally, Defendants' assert that summary judgment is proper as to Count Two - the violation of the New Jersey Civil Rights Act – because neither the State nor the Troopers are "persons" under N.J.S.A. 10:6-2. Defendants' further contend that summary judgment should be granted on Count Three – New Jersey constitutional violations – because the Troopers are entitled to qualified immunity for all state or common law claims. Furthermore, Defendants' argue that they are entitled to summary judgment on Count Four – claims for malicious prosecution, false arrest, and false imprisonment – because Plaintiff is unable to satisfy the elements of those claims. Defendants' also assert that summary judgment should be granted on Count Five – civil conspiracy – because Plaintiff failed to provide facts necessary to sustain a 42 U.S.C. § 1985 claim. Lastly, Defendants' argue that summary judgment should be granted on Count Six – a violation of the New Jersey Tort Claims Act - because Plaintiff cannot sustain his burden of proof on the components of negligence. Plaintiff responded to some, but not all, of these arguments in his opposition brief and argued that genuine issues of material fact exist which would preclude summary judgment.[1]

## II. ANALYSIS

### A. Summary Judgment Standard

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact

---

[1] The Court will consider the parts of Defendants' motion that Plaintiff failed to address as unopposed. *See Pridgen v. RAB Commc'ns, Inc.*, 2011 WL 5920932, *___ (D.N.J. Nov. 28, 2011) (stating that Plaintiff's failure to respond to an argument allows the Court to "review this aspect of defendant's motion as unopposed").

exists, the court must view the facts in the light most favorable to the nonmoving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176–77 (3d Cir. 1997). The Court is not required to "weigh the evidence and determine the truth of the matter" but instead need only determine whether a genuine issue necessitates a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

On a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the nonmoving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. The nonmoving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

  B.  **Federal Claims**

Plaintiff's Complaint alleges violations of: Plaintiff's civil rights pursuant to 42 U.S.C. § 1983; the Fourth, Fifth, and Fourteenth Amendments; malicious prosecution, false arrest, and false imprisonment; and civil conspiracy. There are no genuine disputes of material fact regarding these federal claims. Defendants are entitled to judgment on Plaintiff's federal claims because: (1) they are barred by the Eleventh Amendment; (2) the Defendants are not a "person" under § 1983 nor § 1985; (3) Plaintiff's underlying criminal proceeding did not terminate favorably and Defendants had probable cause sufficient to defeat Plaintiff's claims for malicious

prosecution, false arrest and false imprisonment; (4) § 1983 precludes recovery based solely on *respondeat superior* and supervisory liability; and (5) the Troopers are entitled to qualified immunity. As such, summary judgment should be granted on Plaintiff's federal claims.

First, the Eleventh Amendment bars Plaintiff's federal constitutional claims against Defendants in their official capacities. The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment protects states and their agencies and departments from suit in federal court . . . ." *Ortega v. New Jersey*, 2012 WL 4742806, \*-- (D.N.J. Oct. 3, 2012). "Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities." *Id.* "Section 1983 does not override a state's Eleventh Amendment immunity." *Id.* Thus, all federal claims against the State, the State Police, and Troopers Fuhrmann and Sickles in their official capacities are improper, and Defendants are entitled to judgment as a matter of law on federal constitutional claims involving these parties in their official capacities. *See Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 489 (D.N.J. 2006).

In addition, the Defendants are entitled to judgment because they are not "persons" as required by § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). While Troopers Fuhrmann and Sickles are literally "persons," officials acting in their official capacity, where the governmental entity is not itself suable, are not "persons" for purposes of § 1983. *Id.* at 71. Plaintiff's opposition reveals that the claims for malicious prosecution, false arrest, and false imprisonment are also brought pursuant to § 1983. *See Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment Pursuant to FED.R.CIV.P. 56*, at 1 and 24.

8

Accordingly, Defendants are entitled to judgment on the claims for malicious prosecution, false arrest, and false imprisonment, for this same reason.[2]

Plaintiff's § 1983 claims against Colonel Fuentes are premised upon the theory of *respondeat superior*. Plaintiff has failed to show the existence of any policy or custom that caused the Troopers to violate his civil rights. *See Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). Plaintiff's general allegation of *laissez-fair* training practices by supervisors is not sufficient for § 1983 liability, as this factual contention merely resuscitates the principle of *respondeat superior*. *Id.* at 691. Accordingly, the State, the State Police, Troopers Fuhrmann and Sickles in their official capacities, and Colonel Fuentes, are entitled to summary judgment on Plaintiff's § 1983 claims.[3]

Count V of Plaintiff's Complaint alleges a cause of action for civil conspiracy based upon false arrest, false imprisonment and malicious prosecution, and this Court assumes that such cause of action is brought under 42 U.S.C. § 1985.[4] § 1985(3) provides that

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth

---

[2] The Defendants are also entitled to summary judgment on Plaintiff's claim for malicious prosecution because Plaintiff failed to show that the underlying criminal proceeding terminated in his favor. *See Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007). Instead, Plaintiff pleaded guilty to resisting arrest, which is not a favorable termination nor sufficient to prove his innocence in order to maintain a claim for malicious prosecution. *See DiFronzo v. Chiovero*, 406 Fed. Appx. 605 (3d Cir. 2011). Defendants are further entitled to judgment on Plaintiff's claims for malicious prosecution, false arrest and false imprisonment because the Grand Jury's indictment constitutes *prima facie* evidence of probable cause. *Camiolo v. State Farm Fire and Cas. Co.*, 334, F.3d 345, 363 (3d Cir. 2003).

[3] It should be noted that, in finding Plaintiff's constitutional rights were not violated, Troopers Fuhrmann and Sickles are entitled to qualified immunity on Plaintiff's § 1983 claims. *See Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). However, the Court need not analyze this issue because for the reasons set forth above, Defendants' are already entitled to judgment on Plaintiff's federal constitutional claims.

[4] Defendants' moving papers presume that Plaintiff's civil conspiracy claims are brought pursuant to 42 U.S.C. § 1985, and Plaintiff fails to oppose this contention.

> in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiff has failed to set forth any facts to support the claim that Defendants' conspired to enter Plaintiff's premises for the purpose of depriving Plaintiff of his civil rights. Plaintiff's own Complaint states that the Troopers entered the premises for the purpose of responding to a physical altercation between two females, not for the purpose of depriving Plaintiff of his civil rights. [docket # 41, Declaration of Vincent J. Rizzo, Jr., Ex. A, Compl. ¶¶26-27]. Further, similar to the analysis set forth above, the State, the State Police, Troopers Fuhrmann and Sickles in their official capacity, and Colonel Fuentes in his official capacity, are not "persons" for purposes of § 1985. *See Dorsett v. New Jersey State Police*, 2007 WL 556890, *-- (D.N.J. Feb. 15, 2007). Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1985 claims.[5]

### C. State Law Claims

28 U.S.C. § 1367(c)(3) states that "The district courts may decline to exercise [supplemental] jurisdiction over a claim under subsection (a) if − [ ] the district court has dismissed all claims over which it has original jurisdiction[.]" Given that this Court has granted Defendants' motion for summary judgment on all federal claims, the only remaining causes of action in Plaintiff's Complaint are: (1) claims under the New Jersey state constitution; (2) N.J.S.A. 10:6-2; (3) false arrest, false imprisonment and malicious prosecution under state law;

---

[5] To the extent that Count V of Plaintiff's Complaint for civil conspiracy arises out of state law, see section C. of this Opinion.

and (4) the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq*. Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), as those claims which the Court had original jurisdiction over have been dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is hereby GRANTED, with prejudice, on Plaintiff's federal claims. This Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). An appropriate Order accompanies this Opinion.