NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRYAN M. SANTINI, | |
| Plaintiff, | Civil Action No. 11-639 (BRM) |
| v. | **OPINION** |
| COLONEL JOSEPH R. FUENTES, et al., | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants State of New Jersey (the "State"), Colonel Joseph R. Fuentes ("Fuentes"), Trooper J.L. Fuhrmann ("Fuhrmann"), and Trooper R.H. Sickles' ("Sickles")[1] (collectively, "Defendants") Second Motion for Summary Judgment. (ECF No. 96.) Plaintiff Bryan M. Santini ("Plaintiff") opposes the motion. (ECF No. 100.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

I.  **BACKGROUND**

The Third Circuit in its vacation of this Court's grant of Defendants' first summary judgment motion, *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015), summarized the essential facts of the case, which were drawn from Plaintiff's own statements:

> This appeal arises from an altercation between Santini and several members of the New Jersey State Police that took place on February 3, 2009. On that day, Santini was working at his family's dairy farm in Harmony Township, Warren County, New Jersey, where he

---

[1] Fuhrmann and Sickles are referred to collectively as the "Troopers."

1

milked cows in the farm's milk house. Between 5:00 and 5:30 pm that evening, a fight broke out in the farm's milk house between two women—Tiffany Drake and Crystal Knighton. Santini witnessed the fight. There were approximately ten other witnesses to the fight. One of those witnesses called the police to report the incident.

Shortly thereafter, police officers from Greenwich Township, Lopatcong Township, and the state police arrived at the Santini family farm. Santini estimates that approximately twenty officers were present; three to five of those officers were from the state police. By the time the police arrived, the fight between Drake and Knighton had ended. Ms. Drake told the police that Santini had recorded the fight on his cell phone. Santini—standing outside of the milk house—then spoke with an officer from Greenwich Township to describe what he had witnessed.

During that conversation, an officer from the state police, [] Fuhrmann, called Santini over. As Santini began to describe what he had witnessed to Fuhrmann, the Trooper yelled at Santini to take his hands out of his pockets. Santini maintains that he complied and explained that his hands were cold because he had been working in water all day milking cows. Fuhrmann responded: "I don't care. Keep them where I [can] see them." Santini continued his story; however, after Santini's hands went back in [his] pockets, Fuhrmann again told Santini to keep his hands where the Trooper could see them. Santini maintains that he again immediately complied and apologized, saying: "I'm sorry, I only have my cell phone and my wallet."

Santini continued his story. However, while he was speaking, he pulled his hands into the sleeves of his sweatshirt. Santini maintains that he pulled his hands into his sleeves on instinct alone because his hands were cold. At that point, Fuhrmann yelled at Santini about his hands for the fourth time. In response, Santini told Fuhrmann that he was going to return to work because he had already told the other officers his story. Santini then began to walk back to the milk house. At that point, Fuhrmann said "[c]ome here" and grabbed Santini's right wrist. The two men fell to the ground, where Santini landed on his side and then rolled onto his stomach. As Santini struggled to return to his feet, one officer—who Santini believes was Fuhrmann—jumped on top of Santini and told him to put his hands behind his back because he was under arrest.

As that officer spoke, other officers were on top of Santini, punching him and beating him with nightsticks. At the time, Santini's hands were pinned beneath his body. While Santini was

facedown, the officers surrounding him instructed Santini to stop resisting. Santini understood that their instruction meant for him to remove his hands from beneath his stomach. In his deposition, Santini states that he was unable to remove his arms because of the weight of the officers on top of him. However, in Santini's plea colloquy, he admitted that he resisted arrest.

    An officer then sprayed Santini with pepper spray. Santini states that he was sprayed for thirty seconds to one minute and that two bottles of spray were used. After the pepper spray was used, the officers were no longer on top of Santini, he was able to free his arms, and he was subsequently handcuffed. After handcuffing Santini, the officers ceased punching, kicking, hitting with batons, and pepper spraying him. Santini was then taken to Warren County Jail. There, Santini was treated with Tylenol and eye drops. He maintains that he had "marks everywhere" after the incident. However, his medical records from the incident reveal no permanent or lasting injuries.

795 F.3d at 413-14 (citations and footnotes omitted).

On February 3, 2011, Plaintiff filed a Complaint asserting six claims against Fuentes, Fuhrmann, and Sickles[2] in their individual and official capacities under both Federal and State law alleging, among other things, Defendants used excessive force in effectuating an arrest of Plaintiff. (ECF No. 1.) On January 11, 2013, Defendants moved for summary judgment, arguing: Plaintiff's claims against the State and the Troopers in their official capacities were barred by the Eleventh Amendment; the Troopers were not "persons" for purposes of 42 U.S.C. §§ 1983 and 1985; Plaintiff could not prove the requisite elements necessary to sustain his claims for malicious prosecution, false arrest, and false imprisonment; Plaintiff could not maintain a § 1983 claim against the State or Fuentes on the theory of *respondeat superior*; and the Troopers were entitled

---

[2] The State of New Jersey was also a named Defendant in Plaintiff's Complaint and was granted summary judgment by this Court (ECF No. 60), but was not included in Plaintiff's reconsideration motion (ECF No. 61) or in the Third Circuit's opinion partially reversing the grant of summary judgment. *See Santini*, 795 F.3d at 410. Accordingly, the Court will address only the excessive force claim against those individual Defendants.

to qualified immunity. (ECF No. 41.) On September 18, 2013, the Court granted the motion for summary judgment.[3] (ECF No. 60.) On October 2, 2013, Plaintiff filed a motion for reconsideration, asking the Court to reconsider its grant of summary judgment to Fuhrmann and Sickles in their individual capacities for the first, second, and third counts of the Complaint. (ECF No. 61.) On May 6, 2014, the Court denied Plaintiff's motion for reconsideration. (ECF Nos. 63 and 64.)

On June 23, 2015, Plaintiff appealed the Court's grant of summary judgment regarding the Troopers in their individual capacities, and the Court's denial of his motion for reconsideration. (ECF No. 61.) On August 4, 2015, the Third Circuit reversed the Court's grant of summary judgment as to Fuhrmann and Sickles in their individual capacities and its denial of Plaintiff's motion for reconsideration of that decision. *Santini*, 795 F.3d at 420.

The Third Circuit's holding was narrow, limited to this Court's grant of summary judgment on the question of whether the Troopers violated Plaintiff's constitutional rights through the use of excessive force. *Id.* at 419. The Third Circuit analyzed whether the Troopers were entitled to qualified immunity under the Supreme Court's two-part test promulgated in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first part of the *Saucier* test requires a court to consider "whether the facts—taken in the light most favorable to the nonmoving party—show that a government official violated a constitutional right." *Id.* at 417 (citing *Saucier*, 533 U.S. at 201). If the court finds a government official did violate a constitutional right, the court then "ask[s] whether that right was clearly established at the time of the official's actions." *Id.* The Third Circuit reversed this Court's grant of summary judgment to the Troopers only on the first part of the *Saucier* test, finding

---

[3] The motion was decided by the Honorable Joel L. Pisano, U.S.D.J. On August 8, 2016, the case was transferred to the undersigned. (ECF No. 87.)

"material factual disputes exist as to whether Santini's constitutional rights were violated." *Id.* at 420. Specifically, the Third Circuit found a reasonable jury could find the Troopers used excessive force in light of the following facts taken in the light most favorable to Plaintiff: (1) Plaintiff was not a suspect at the time law enforcement arrived at the scene; (2) he initially complied with Fuhrmann's requests to keep his hands visible, though he admits he did not obey Fuhrmann completely and eventually balled his hands in his sleeves; (3) Plaintiff told Fuhrmann the object in his pocket was his cell phone. *Id.* at 419-20 (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)). The conduct a reasonable jury could find constituted excessive force was that Plaintiff "was grabbed, tackled, punched, kicked, and pepper sprayed." *Id.* at 420. The court remanded the case to this Court without evaluating the second part of the *Saucier* test. *Id.*

On November 25, 2016, Defendants filed the Second Motion for Summary Judgment, arguing the Troopers are entitled to qualified immunity, because, even if they violated Santini's constitutional rights, those rights were not clearly established at the time. (ECF No. at 6-12.) Defendants also contend *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff's claim for excessive force, because a finding that the Troopers used excessive force would undermine his guilty plea to resisting arrest. (ECF No. 107 at 14.)

Plaintiff interprets the Third Circuit's decision as reversing this Court's grant of summary judgment in its entirety and argues the case must proceed to trial. (ECF No. 100 at 8-9.) Plaintiff alternatively argues the Troopers are not entitled to qualified immunity, as Plaintiff's constitutional rights were clearly established at the time of the incident. (*Id.* at 10.) Finally, Plaintiff argues three of his claims remain: (1) the excessive force claim against the Troopers in their individual capacities; (2) the unreasonable seizure claim against the Troopers in their individual capacities;

and (3) the false arrest/false imprisonment claim against the Troopers in their individual capacities. (*Id.* at 2.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative

6

evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. The Scope of this Motion

As a preliminary matter, this Court interprets the Third Circuit's mandate to require only one issue to be decided: whether, pursuant to the second part of the *Saucier* test, any right the Troopers allegedly violated was clearly established at the time of the incident. *See Santini*, 795 F.3d at 417 (citing *Saucier*, 533 U.S. at 201). The Third Circuit found this Court "did not proceed

7

to the second *Saucier* step," *id.* at 418 (citation omitted), because it erred when it did not find, as the Third Circuit did, "material factual disputes exist as to whether Santini's constitutional rights were violated," *id.* at 420. The Third Circuit's decision was clear and narrowly tailored:

> [A] reasonable factfinder could find that Santini's constitutional rights were violated. Therefore, the District Court's grant of summary judgment *on that issue* was inappropriate. We accordingly *vacate in part* the court's decisions dated September 18, 2013 [granting summary judgment] and May 6, 2014 [denying Plaintiff's motion for reconsideration] and remand them for further proceedings consistent with this opinion.

*Id.* at 419 (emphasis added). The Third Circuit reiterated:

> [M]aterial factual disputes exist *as to whether Santini's constitutional rights were violated*. The existence of those disputes compels us to find that the District Court's grant of summary judgment was inappropriate, as was its denial of Santini's motion to reconsider that decision. . . We accordingly *vacate in part* the decisions of the District Court and remand this case for further proceedings consistent with this Opinion.

*Id.* at 420 (citations omitted) (emphasis added).

Plaintiff concedes the only Defendants against whom he has any remaining claims are the Troopers in their individual capacities. (ECF No. 100 at 2.) Plaintiff argues he has three bases for his claims against the Troopers in their individual capacities: (1) excessive force; (2) unreasonable search and seizure; and (3) false arrest/false imprisonment. With the exception of excessive force, the Third Circuit did not address these issues. As a result, this Court's grant of summary judgment and denial of Plaintiff's motion for reconsideration stand as they apply to every ground for a claim of violation under the Constitution pursuant to 42 U.S.C. § 1983 (Count One) other than excessive force.[4] The Third Circuit's decision had no effect on this Court's grant of summary judgment to

---

[4] Plaintiffs' remaining claims are state-law claims over which this Court declined to exercise supplemental jurisdiction and which were not a subject of the Third Circuit's review. *Santini*, 795 F.3d at 421.

8

the Troopers in their individual capacities on Plaintiff's claim he was subjected to an unreasonable seizure under the Fourth Amendment, his claim he was denied his rights to due process under the Fifth Amendment, and his claim for deprivation of his liberty and property under the Fourteenth Amendment. This Court's only task on this motion is to analyze under the second part of the *Saucier* test whether the Troopers are entitled to qualified immunity from Plaintiff's claim for excessive force. *See Santini*, 795 F.3d at 418.

### B. Qualified Immunity

To determine whether a public official is entitled to qualified immunity, courts first determine whether the official violated a constitutional right, and then ask whether the right was clearly established at the time of the violation. *Santini*, 795 F.3d at 417 (citing *Saucier*, 533 U.S. at 201). As the Third Circuit found a reasonable jury could find Plaintiff's constitutional rights were violated, *id.* at 420, this Court proceeds to the second step of the *Saucier* test. This Court must define "the right at issue" and determine if that right was clearly established at the time of the incident. *See id.* at 417 (citing *Saucier*, 533 U.S. at 201); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The right at issue is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Santini*, 795 F.3d at 417 (citing *Saucier*, 533 U.S. at 202). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012)). The Supreme Court has stated "that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205. Qualified immunity affords government officials considerable protection from liability, as it "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

9

A plaintiff seeking to overcome qualified immunity need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742). Instead, a court is "required to frame the right at issue in a more particularized . . . sense." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Here, viewing the facts in the light most favorable to Plaintiff, *Marino*, 358 F.3d at 247, the right at issue is whether Plaintiff had a right to be free from the use of force, including the use of pepper spray and strikes with nightsticks, as a non-suspect witness who walked away from an investigatory discussion, and who admitted he (1) unintentionally did not comply with an officer's request to keep his hands visible, and (2) resisted arrest. *See Santini*, 795 F.3d at 413-14. The Court finds this right was not clearly established at the time of the incident, particularly in light of Plaintiff's admission in his plea colloquy that he resisted arrest. *See id.* at 414; ECF No. 41-3 at 7:18-9:12. As the Third Circuit found, a jury could conclude the Troopers' conduct constituted excessive force. *Id.* at 420. However, the Troopers' use of force on a party who admitted he was resisting arrest does not support a finding they were "plainly incompetent" or that they "knowingly violated the law." *Mullenix*, 136 S. Ct. at 308 (quoting *Malley*, 475 U.S. at 341). Therefore, the Court finds the Troopers are entitled to qualified immunity.

Plaintiff argues he does not need to define the right at issue with specificity, because "in some cases 'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] been previously been held unlawful.'" (ECF No. 100 at 11 (quoting *Hope v. Pelzer*, 536 U.S.

730, 741 (2002).) Plaintiff's argument is unpersuasive. *Hope* involved claims by an inmate who was forced to remove his shirt and left chained to a fence in the sun for seven hours with no bathroom breaks and given water once or twice. 536 U.S. at 734. The defendant prison guards also taunted him about his thirst. *Id.* at 735. While the Third Circuit held the facts of this case, taken in the light most favorable to Plaintiff, could support of finding of excessive force, Plaintiff's allegations do not rise to the level of the hours-long mistreatment and mockery of the plaintiff in *Hope*, which the Supreme Court determined were so egregious that any official would know they were against the law.

To the extent Plaintiff identifies the right at issue, he does not do so with the required specificity. *See Estep v. Mackey*, 639 F. App'x. 870, 873 (3d Cir. 2016) (citing *Mullenix*, 136 S. Ct. at 309). Plaintiff articulates the right at issue as the right to be free from arrest without probable cause or reasonable suspicion. (ECF No. 100 at 26.) Plaintiff disregards Supreme Court and Third Circuit precedent that demands district courts define the right at issue in qualified immunity cases with specificity and a consideration of the facts of each case. *Mullenix* 136 S. Ct. at 309; *Estep*, 639 F. App'x. at 873. The Third Circuit has held a court must not define a plaintiff's right too generally when deciding whether qualified immunity applies in an excessive force case. *Estep*, 639 F. App'x. at 873 (citing *Mullenix*, 136 S. Ct. at 309). The court remanded an excessive force case after finding the district court had defined a plaintiff's right too generally as "the Fourth Amendment right to be free from the excessive use of force." *Id.* (citing *Mullenix*, 136 S. Ct. at 309). Plaintiff's articulation of the right at issue is precisely the generalized statement the Third Circuit has rejected.

Plaintiff has not cited any authority that compels this Court to find the right at issue was clearly established in light of the particular facts of this case. *See al-Kidd*, 563 U.S. at 741. Plaintiff

11

cites two cases with facts similar to those in this case: *United States v. Burton*, 228 F.3d 524 (4th Cir. 2000), and *United States v. Davis*, 94 F.3d 1465 (10th Cir. 1996). Plaintiff argues these cases demonstrate the Troopers should have been aware they were violating the law. In *Burton*, four police officers approached Kenneth Burton outside a convenience store and asked him for identification several times, but he did not respond. 228 F.3d at 526. The officers asked Burton to remove his hand from his pocket, but he also did not respond to that request. *Id.* One of the officers moved behind Burton, reached into his pocket, and grabbed his hand. *Id.* The officer and Burton fell to the ground, and a struggle ensued during which Burton drew a handgun and attempted to shoot the officer. *Id.* The officers subdued Burton, and he was indicted for unlawful possession of a firearm by a felon. *Id.* The Fourth Circuit ruled the district court erred in denying Burton's motion to suppress evidence of the handgun, because the officer did not have either probable cause or reasonable suspicion to search Burton's pocket based on his refusal to answer questions. *Id.* at 528. Plaintiff analogizes the unlawful search of Burton to Fuhrmann's actions when he grabbed Plaintiff's arm after Plaintiff did not keep his hands in sight. (ECF No. 100 at 19.)

In *Davis*, the Tenth Circuit reversed the district court's denial of a motion to suppress evidence of a handgun obtained from a suspect who ignored police officers' requests to remove his hands from his pockets. 94 F.3d at 1467. The officers, acting on information that Davis was selling narcotics, approached him and told him to remove his hands from his pockets. *Id.* David did not comply and walked away. *Id.* Two officers grabbed Davis's arms and put him in a police car. *Id.* While in the car, Davis removed a gun from his pocket and threw it in the back seat. *Id.* The Tenth Circuit held the circumstances that preceded the arrest, including the fact that Davis had his hands in his pockets, did not justify the officers' investigative detention. *Id.* at 1469.

While *Burton* and *Davis* have some factual resemblance to this case, particularly the officers' concern with the plaintiffs' hands in their pockets, those cases addressed the permissibility of searches, not excessive force. The courts in those cases did not evaluate whether the officers applied excessive force pursuant to the factors the Supreme Court established in *Graham*, as the Third Circuit did in reviewing this case. *Santini*, 795 F.3d at 417 (citing *Graham*, 490 U.S. at 395). Courts apply very different analyses in unlawful search cases and excessive force cases. In the former, courts must determine, as the *Burton* and *Davis*, whether the officer who conducted the search had "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Burton*, 228 F.3d at 527 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also, Davis*, 94 F.3d at 1468 (citing *Sokolow*, 490 U.S. at 7). In excessive force cases, courts weigh "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." *Santini*, 795 F.3d at 417 (citing *Graham*, 490 U.S. at 395). Since *Burton* and *Davis* did not address the issue of excessive force, those cases do not represent "existing precedent [that] placed the statutory or constitutional question beyond debate" in this case. *al-Kidd*, 563 U.S. at 741.

### C. The *Heck* Doctrine

Even if the Court were to find the Troopers were not entitled to qualified immunity, Plaintiff's excessive force claim would be barred pursuant to the *Heck* doctrine. *See Heck*, 512 U.S. at 477. Under *Heck*, a § 1983 plaintiff cannot "recover damages for. . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid" or "imply that the conviction was wrongful" unless the plaintiff can show the conviction has been reversed, expunged, or otherwise made invalid. 512 U.S. at 486-87 & n.6. This Court has held a plaintiff cannot assert a

13

civil claim for excessive force after a conviction for resisting arrest. *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 756-58 (D.N.J. 2016).

Here, Plaintiff pled guilty to resisting arrest. *Santini*, 795 F.3d at 419; ECF No. 41-3 at 7:18-9:12. A finding that the Troopers violated Plaintiff's constitutional rights through excessive force would render his plea invalid. *See Heck*, 512 U.S. at 486-87; *Panarello*, 160 F. Supp. 3d at 756-58. This Court has recognized the Superior Court, Appellate Division of New Jersey has expressly barred plaintiffs who have pled guilty to resisting arrest from asserting a civil claim for excessive force. *Panarello*, 160 F. Supp. 3d at 757 (citing *Bustamante v. Borough of Paramus*, 413 N.J. Super. 276, 296 (App. Div. 2010) ("By pleading guilty . . . plaintiff forfeited any claim that defendants used excessive force in effecting his arrest.") The Appellate Division reasoned "a favorable outcome in the civil action would be inconsistent with the admissions [plaintiff] made by pleading guilty." *Bustamante*, 413 N.J. Super. at 295. Here, Plaintiff's guilty plea likewise precludes his claim for excessive force, because a favorable outcome on that claim would be inconsistent with his plea.

Therefore, the Troopers' Motion for Summary Judgment is **GRANTED**.

**D.    State Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise [supplemental] jurisdiction over a claim under subsection (a) if – [ ] the district court has dismissed all claims over which it has original jurisdiction[.]" Given that this Court has granted Defendants' Motion for Summary Judgment on all federal claims, the only remaining causes of action in Plaintiff's Complaint are: (1) claims under the New Jersey state constitution; (2) N.J.S.A. 10:6-2; (3) false arrest, false imprisonment and malicious prosecution under state law; and (4) the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq*. Accordingly, this Court declines to exercise supplemental

jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), as those claims over which the Court had original jurisdiction have been dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby **GRANTED**, with prejudice, on Plaintiff's federal claims. This Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). An appropriate Order will follow.

**Date: July 27, 2017**  /s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**